UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| BRENDA ARLENE ROGERS, ) | |
| ) | Case No. 4:20-cv-8 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Susan K. Lee |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| COMMISSIONER OF ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION

Plaintiff Brenda Arlene Rogers brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her Social Security Disability Insurance benefits ("SSDI benefits") for lack of disability. (Doc. 1.) On July 6, 2020, Rogers filed a motion for judgment on the pleadings (Doc. 17), and on September 17, 2020, the Commissioner filed a motion for summary judgment (Doc. 22). On October 5, 2020, United States Magistrate Judge Susan K. Lee filed a report and recommendation (Doc. 25) recommending that: (1) Rogers's motion for judgment on the pleadings (Doc. 17) be granted; (2) the Commissioner's motion for summary judgment (Doc. 22) be denied; and (3) the decision of the Commissioner be reversed and remanded for further proceedings. The Commissioner timely objected to the report and recommendation (Docs. 27, 28), and Rogers responded (Doc. 29). For the following reasons, the Court will **ACCEPT** and **ADOPT** Magistrate Judge Lee's report and recommendation (Doc. 25).

## I. FACTUAL BACKGROUND

The Commissioner did not object to the Magistrate Judge's recitation of the facts, and the Court **ACCEPTS** and **ADOPTS BY REFERENCE** Magistrate Judge Lee's recitation of the facts (Doc. 25, at 1–4).

## II. PROCEDURAL HISTORY

Rogers brought this action seeking judicial review of the Commissioner's final decision denying her application for SSDI benefits. (*See* Doc. 1.) Rogers argues that the Administrative Law Judge's ("ALJ") determination that she is not disabled was contrary to the facts and the law. (*See id.*) In deciding to deny benefits, the ALJ analyzed Rogers's claim under the five-step, sequential evaluation process outlined in 20 C.F.R § 404.1520(a)(4) and summarized as follows:

1. If claimant is doing substantial gainful activity, [she] is not disabled.

2. If claimant is not doing substantial gainful activity, [her] impairment must be severe before [she] can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and [her] impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent [her] from doing [her] past relevant work, [she] is not disabled.

5. Even if claimant's impairment does prevent [her] from doing [her] past relevant work, if other work exists in the national economy that accommodates [her] residual functional capacity and vocational factors (age, education, skills, etc.), [she] is not disabled.

*Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). During the evaluative process, the claimant bears the burden of proof at steps one through four. *Id.* However, at step five, the burden shifts to the Commissioner to identify jobs in the economy that the claimant could perform despite her impairments. *Id.*

In this case, the ALJ determined that Rogers had not engaged in substantial gainful activity since the onset of her impairments and that some of her impairments were severe, and thus she satisfied steps one and two. (Doc. 11, at 21–22.) The ALJ then concluded that Rogers "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," as required to satisfy step three and trigger the presumption of disability. (*Id.* at 22.) For the purposes of steps four and five, the ALJ found that she had the residual functional capacity to perform "light work as defined in 20 CFR [§] 404.1567(b) except limited to occasional handling and fingering with dominant right upper extremity." (*Id.* at 23.) Finally, although the ALJ determined that she was unable to perform any of her past relevant work, he concluded that Rogers was capable of working as an usher, furniture rental clerk, or egg washer, and thus was not disabled. (*Id.*) In this action, Rogers challenges the ALJ's determination that she is not disabled on the basis that the determination was not supported by substantial evidence. (Doc. 1, at 2; Doc. 18, at 1.)

Magistrate Judge Lee reviewed the record and the parties' briefs and recommended that the Court reverse the ALJ's decision and remand the case for further proceedings based on the ALJ's failure to "explicitly tie any of the evidence to his determination about Plaintiff's ability to lift and carry or to her handling and fingering abilities." (Doc. 25, at 17, 19, 22.)

### III.  STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the report and recommendation to which objections are made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  28 U.S.C. § 636(b)(1).  In doing so, the Court's standard of review is essentially the same as the magistrate judge's—review is

limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were applied. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). "Substantial evidence" is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, the Court will affirm the ALJ's findings "as long as they 'are reasonably drawn from the record.'" *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (quoting *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). If supported by substantial evidence, the Court must affirm the ALJ's findings even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, "even where the ALJ's findings are otherwise supported by substantial evidence, the ALJ's failure to follow agency rules or regulations is a ground for reversal." *Hargett*, 964 F.3d at 551 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

## IV. ANALYSIS

The sole issue before the Court is whether substantial evidence supports the ALJ's conclusion that Rogers had the "residual functional capacity" ("RFC") to perform light work that included "occasional handling and fingering with the right dominant upper extremity." (Doc. 25, at 7, 17; Doc. 27, at 2; Doc. 29, at 1.) The RFC of a social-security-benefits applicant "is the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security Administration considers all medically determinable impairments, including those not determined to be "severe," when assessing an applicant's RFC. *Id.* § 404.1545(a)(2). "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)

4

(citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Id.* (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). Furthermore, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Id.* (citing *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004)).

> In making the RFC determination in Rogers's case, the ALJ found that:
>
> the record generally supports complaints of ongoing neck pain following the cervical discectomy and fusion, along with pain complaints involving the upper extremity from peripheral neuropathy. However, other than ongoing subjective complaints of neck pain, and upper extremity pain and numbness, treatment notes fail to demonstrate more than minimal periodic abnormal findings, such as some intermittent reduced strength or sensation in the upper right extremity.

(Doc. 11, at 24.) "Accordingly," he concluded, "the record fails to reflect persisting debilitating neck and right upper extremity problems that would limit her to no greater than sedentary exertional work." (*Id.*)

In so deciding, the ALJ did not "defer or give any specific evidentiary weight . . . to any prior administrative medical finding(s) or medical opinion(s)" and found "the opinions from the State Agency medical consultants . . . unpersuasive." (*Id.*) Rogers agrees that the rejection of these opinions was proper, but argues that the "such a rejection . . . left the ALJ's RFC determination without any support whatsoever." (Doc. 18, at 12.) Rogers urges the Court to side with other district courts in this Circuit and find that "the ALJ must generally obtain a medical expert opinion when formulating RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a common[-]sense judgment about

5

functional capacity." (*Id.* (quoting *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017)).)

20 C.F.R. § 416.945(a)(3) directs the Social Security Administration to assess RFC "based on all of the relevant medical and other evidence." It provides that the applicant is generally responsible for providing the evidence used to make the RFC determination. *See* 20 C.F.R. § 416.945(a)(3). However, the regulation further provides:

> before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 416.912(d) through (e).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 416.913.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 416.929.)

*Id.*

In the Sixth Circuit, there is no "bright-line rule . . . that medical opinions must be the building blocks of the residual functional capacity finding." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (holding that an ALJ need not base his or her RFC determination on a medical opinion as long as it is supported by substantial evidence, including objective medical evidence). In in an unpublished case, the Sixth Circuit opined that:

> to require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

*Rudd*, 531 F. App'x at 728 (citations and internal quotation marks omitted). Nevertheless, the ALJ "must make a connection between the evidence relied on and the conclusion reached." *Tucker*, 775 F. App'x at 226.

Magistrate Judge Lee found that the ALJ's analysis of how the record results in the RFC was conclusory. (Doc. 25, at 19.) She observed that "the only mention of the lifting and carrying requirement in the decision is his statement that there is no evidence in the record that Plaintiff would be incapable of lifting twenty pounds" and that "[t]here is no discussion at all of the light-work requirement that Plaintiff be able to frequently lift and carry objects weighing up [to] ten pounds." (*Id.*) Magistrate Judge Lee also found that the ALJ failed to explain his basis for determining that Rogers can occasionally perform handling and fingering with her upper right extremity. (*Id.* at 20.) Magistrate Judge Lee recommended that the case be remanded for the ALJ's failure to provide "an accurate and logical bridge" between the evidence and his RFC determination. (*Id.* (quoting *Gross*, 247 F. Supp. 3d at 829).) The Commissioner objects to Magistrate Judge Lee's report and recommendation on the grounds that it (1) misapplies the case law and (2) reverses the burden of proof. (Doc. 27, at 2.)

### A. Application of Case Law Concerning Medical-Opinion Evidence

First, the Commissioner argues that, "although some medical evidence must support the RFC, that evidence need not take the form of a medical *opinion*." (*Id.* at 3 (emphasis in original).) The Commissioner contends that the report and recommendation set forth an untenable "rule" that

> "the ALJ" is not "qualified" to "determine whether the totality of the conditions or symptoms listed" in Plaintiff's progress notes, "along with the other evidence in the record," would support the ALJ's RFC findings.

(*Id.* at 4 (quoting Doc. 25, at 21).) The Commissioner urges the Court to reject this "rule" because it would result in adopting a bright-line requirement—contrary to Sixth Circuit precedent—that a medical opinion is required for an RFC determination. (*Id.*)

The Commissioner misquotes and misinterprets this portion of the report and recommendation. Magistrate Judge Lee did not recommend remanding the case on the basis that the ALJ needs a medical opinion to make the RFC determination or that he is unqualified to make such a determination. Her analysis is much more nuanced than the Commissioner's summary thereof. *After* concluding that the case should be remanded due to a lack of explanation, Magistrate Judge Lee commented on the lack of medical-opinion evidence in the record. (Doc. 25, at 20.) She noted that, because of the lack of medical-opinion evidence, the ALJ relied heavily on his own interpretation of the post-surgery progress notes in assessing Rogers's RFC. (*Id.*) Magistrate Judge Lee specifically acknowledged that Sixth Circuit precedent does not require medical-opinion evidence, but noted that:

> neither the ALJ nor this Court are *as qualified as a physician* to determine whether the totality of the conditions or symptoms listed in the progress notes of Dr. Isenalumhe or Dr. Barron, along with the other evidence in the record, would support the ALJ's conclusion that Plaintiff is capable of lifting and carrying twenty pounds on an occasional basis and ten pounds on a frequent basis—in light of her testimony that she can lift only five pounds and cannot depend on her right arm—and that Plaintiff can occasionally perform handling and fingering tasks.

(*Id.* at 21 (citing Doc. 11, at 20–21).) She did not state that anyone other than the ALJ was responsible for making the RFC determination or that the ALJ must rely on a medical opinion, only that such an opinion may aid the ALJ in making the necessary logical connection between the evidence and the record and his conclusion about Rogers's RFC. (*See id.* at 21–22.) Magistrate Judge Lee simply suggested that "the ALJ may find it appropriate to seek medical opinion evidence" on remand; she did not recommend that the case be remanded for failure to obtain a medical opinion. (*See id.* at 22; Doc. 27, at 4.)

Moreover, the Commissioner's speculation that "there is no possible development of this case other than procuring a medical opinion" does not convert Magistrate Judge Lee's suggestion into a bright-line rule. (Doc. 27, at 4.) Magistrate Judge Lee recommends reversal and remand of the ALJ's determination based on a lack of explanation and clear connection between the RFC and the evidence in the record. (*See* Doc. 25, at 21–22.) Even if the ALJ determines that a medical opinion is necessary to provide the requisite "connection between the evidence relied on and the conclusion reached," *Tucker*, 775 F. App'x at 226, this would not create a bright-line rule that medical-opinion evidence is always required. As Magistrate Judge Lee acknowledges, medical opinions are not always necessary. (Doc. 25, at 20 (citing *Rudd*, 531 F. App'x at 727.) Nevertheless, the RFC determination must be supported by substantial evidence to avoid reversal. In some cases, there will be substantial evidence in the record to support the RFC determination without any medical-opinion evidence. In other cases, when there is not ample objective medical evidence or other relevant evidence, a medical opinion may provide the supplement necessary to afford reasonable support to the ALJ's conclusions.

For these reasons, the Court will **OVERRULE** the Commissioner's objection to the report and recommendation on the grounds that Magistrate Judge Lee misapplied the case law to create a bright-line rule requiring medical-opinion evidence. This Court does not hold that an ALJ must always consider medical-opinion evidence in making an RFC determination—only that such determinations must be supported by substantial evidence.

### B. Burden of Proof at the RFC Stage

Next, the Commissioner objects to the report and recommendation based on Magistrate Judge Lee's alleged "inversion of the burden of proof." (Doc. 27, at 4.) The Commissioner argues that, because it is the plaintiff's burden to show her limitations and not the ALJ's burden

9

to show her lack of limitations, "the appropriate question in reviewing the ALJ's RFC findings is not what evidence supports the assessed capability to lift, carry, handle, and finger, but what evidence mandates greater limitations in those areas." (*Id.* at 4–5.) However, Rogers did submit some evidence that she has difficulty lifting, carrying, and fingering: namely, her own testimony that she cannot carry more than five pounds without experiencing muscle spasms. (*Id.* at 50–51.)

An ALJ has authority to make credibility determinations regarding an applicant's subjective testimony about her symptoms, but such credibility determinations must be supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247–49 (6th Cir. 2007) ("[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence.") In making these credibility determinations, the ALJ first considers "whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* at 247 (citing 20 C.F.R. § 416.929(a)). If so, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* Factors relevant to this evaluation include:

> the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.* (citations omitted). If no objective medical evidence supports an applicant's description of her symptoms, the ALJ must consider the entire case record in assessing credibility, including

> any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.

*Id.* An ALJ must also "explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* at 248 (quoting Soc. Sec. Rul. 96–7p).

Here, the ALJ determined that, although Rogers's impairments could reasonably be expected to produce the symptoms described, her statements about "the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical and other evidence in the record." (Doc. 11, at 23; *see also id.* at 24 ("[T]he objective and other evidence of record fails to present findings sufficient to support a residual functional capacity for anything less than a range of light exertional work, further limited by occasional handling and fingering with the right upper extremity.").) The ALJ considered Rogers's testimony that "she gets sharp muscle spasms and locking of her joints in her forearm, shoulder, and hand," that "she does not have the strength to lift and carry things and drops things," and that "she has trouble doing repetitive tasks and hand trouble twisting jar tops." (*Id.*) Yet, the ALJ then concluded that "[t]here is no indication in the record . . . that she would be incapable of lifting at least twenty pounds on an occasional basis." (*Id.* at 24.) Based on his description of the evidence, it appears that the ALJ relied primarily on (1) comments from the final post-surgical follow-up appointment with Dr. Kueter in September 2015, (2) examination notes from a visit with Dr. Isenalumhe in October 2015, (3) the lack of medical treatment from March 1, 2016, until April 9, 2018, and (4) the notes from the 2018 physician visits. (*See id.* at 24–25.)

The ALJ relies on Dr. Kueter's post-surgery observations that Rogers "was 'doing fairly well' other than a complaint of right upper extremity burning paresthesia, which was noted as 'significantly improved' taking medication (Neurontin)." (*Id.* at 24 (quoting *id.* at 326).) The

11

ALJ further cites Dr. Kueter's assessment that post-surgical imaging reflected appropriate hardware placement and alignment in her spine and physical examination reflected a grip strength of "4+ over 5" with her upper right extremity. (*Id.* (quoting *id.* at 326).) The ALJ also mentions Dr. Kueter's note of "some hypersensitivity" in the "distal bilateral upper extremities" that he described as "fairly stable." (*Id.* (quoting *id.* at 326).) However, the ALJ does not mention that, after this appointment, Dr. Kueter increased Rogers's Neurontin prescription from 300 mg three times a day to 600 mg three times a day. (*Id.* at 326–27; *see also id.* at 330 (Dr. Kueter observing, "I think this is a nerve type issue and [Neurontin] would help her pain.").)

The ALJ also cites examination notes from a visit with Dr. Isenalumhe in October 2015, during which no abnormalities were noted other than cervical tenderness. (*Id.* (quoting *id.* at 393–94).) During the October 2015 visit, Dr. Isenalumhe recorded that Rogers's "chief complaints" included right-arm pain, right-shoulder pain, and neck pain. (*Id.* at 393.) Rogers reported body aches, joint pain, joint stiffness, back pain, and tingling/numbness. (*Id.*) During his examination, Dr. Isenalumhe noted that Rogers had a normal range of motion in her neck and shoulder despite the cervical tenderness. (*Id.* at 394.) Concerning his examination of her upper extremities, Dr. Isenalumhe wrote: "Upper Extremities: normal." (*Id.*) Dr. Isenalumhe continued to prescribe her Neurontin ("gabapentin") and Percocet. (*Id.*)

At a follow up visit on November 12, 2015, Dr. Isenalumhe recorded Rogers's chief complaints as including right-hand pain and right-arm pain but again noted her upper extremities as "normal" following a physical examination. (*Id.* at 390–91.) Rogers reported to Dr. Isenalumhe that her pain was the same as the last visit and was made worse by "lifting" and "any activity." (*Id.* at 390.) She reported that her pain was a "9" on the pain scale without medication and a "1" with medication. (*Id.*) At the November 12, 2015 appointment, Dr. Isenalumhe noted

12

"cervical tenderness, lumbosacral tenderness, SI joint tenderness," and a limited range of motion based on his physical examination. (*Id.* at 391.) Very similar observations were noted during follow-ups on December 22, 2015, and January 26, 2016, except that Rogers reported that her pain was "worse" in December. (*Id.* at 384–89.) After each of these visits, Dr. Isenalumhe continued to prescribe her gabapentin and Percocet. (*Id.* at 385, 389, 391–92.) Dr. Isenalumhe also prescribed gabapentin to Rogers following a visit on March 1, 2016. (*Id.* at 382–83.)

Lastly, the ALJ cites the fact that Rogers had received no medical treatment from March 1, 2016, until April 9, 2018. (*Id.* at 24.) He further notes that when she did seek medical treatment at the Grundy County Health Department in April 2018, the physical examination did not reflect any "apparent distress" or abnormalities. (*Id.* at 24–25.) At two subsequent visits to the Grundy County Health Department, her neurological strength was recorded as 4/5 in her right arm, and her cervical radiculopathy was recorded "controlled with gabapentin." (*Id.* at 408, 411.) Based on this evidence, the ALJ concluded that:

> other than ongoing subjective complaints of neck pain, and upper extremity pain and numbness, treatment notes fail to demonstrate more than minimal periodic abnormal findings, such as some intermittent reduced strength or sensation in the right upper extremity.

(*Id.* at 25.)

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citations omitted). Rogers's troubles with her right arm appear to be much improved with medication, and each time she saw a physician, she was prescribed gabapentin to help control her pain. However, it is not clear from the treatment notes whether any of the physicians specifically assessed her ability to lift objects up to twenty pounds occasionally or up to ten pounds frequently. Thus, there is no direct contradiction in the record to Rogers's

testimony that she could not lift more than five pounds. (*See id.* at 50–51.) The ALJ does not describe specific reasons for rejecting her testimony about her lifting and fingering abilities nor how any of the treatment notes specifically undermine the testimony. (*Id.* at 24.) For this reason, the Court agrees with Magistrate Judge Lee's assessment that:

> [T]his Court cannot determine whether substantial evidence supports the ALJ's findings that Plaintiff could lift up to twenty pounds at a time, frequently lift and carry objects weighing up to ten pounds and occasionally perform handling and fingering tasks.

(Doc. 25, at 20.) The Court further agrees that the case should be remanded because, "[a]lthough the ALJ thoroughly discussed the evidence, he failed to provide an accurate and logical bridge between the evidence and the RFC determination." (*Id.* (citations and internal quotation marks omitted).) This conclusion does not reverse the burden of proof, but simply holds the ALJ to his burden to explain his reasons for his credibility determination and his ultimate RFC finding. To the extent the existing record does not provide a clear enough picture of Rogers's medical history regarding her ability to carry, lift, or occasionally handle and finger, the Social Security Administration is responsible for developing a more complete medical history before determining that she is not disabled. *See* 20 C.F.R. § 416.945(a)(3). Accordingly, the Court will **OVERRULE** the Commissioner's objection to the report and recommendation on the grounds that Magistrate Judge Lee reversed the applicable burden of proof.

## V. CONCLUSION

The Court has considered the Commissioner's objections and, after a comprehensive review of the record, has found them without merit. Accordingly, the Court will **ACCEPT** and **ADOPT** Magistrate Judge Lee's report and recommendation (Doc. 25); the Commissioner's objections (Doc. 27) will be **OVERRULED**; Plaintiff's motion for judgment on the pleadings (Doc. 17) will be **GRANTED**; Defendant's motion for summary judgment (Doc. 22) will be

**DENIED**; the Commissioner's decision denying benefits will be **REVERSED**; and this case will be **REMANDED** for further proceedings consistent with the report and recommendation.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**